No. 12173

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

MARLYS J. POMEROY, AS ADMINISTRATRIX OF THE ESTATE
OF C. M. POMEROY, DECEASED,

Plaintiff and Respondent,

-vs-

ARTHUR C. SALLAZ,

Defendant and Appellant.

---

Appeal from: District Court of the Seventh Judicial District,
Honorable L. C. Gulbrandson, Judge presiding.

Counsel of Record:

For Appellant:

Robert W. O'Donovan, Glendive, Montana 59330.
Loble, Picotte and Loble, Helena, Montana 59601.
Gene A. Picotte argued, Helena, Montana 59601.

For Respondent:

Russell C. McDonough, Glendive, Montana 59330.
M. J. Hughes argued, Helena, Montana 59601.
Hughes and Bennett, Helena, Montana.

---

Submitted: June 20, 1972

Decided: JUL 19 1972

Filed: JUL 19 1972

Thomas J. Kearney
                                        Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiff in the district court of the seventh judicial district, county of Dawson. Defendant contends the district judge erred in refusing to grant an order altering and amending the judgment and in the alternative, refusing to grant an order for a new trial.

Plaintiff Marlys J. Pomeroy brought the action to recover the amount of a promissory note issued to her husband, since deceased, by defendant Arthur C. Sallaz and to foreclose on the property covered by a chattel mortgage securing the promissory note. The court, sitting without a jury, entered judgment for plaintiff.

On November 10, 1968, C. M. Pomeroy, husband of plaintiff, died. At the time of his death he owned a promissory note in the amount of $25,000, secured by a chattel mortgage dated February 1, 1964, covering retail liquor license No. 1777 and retail beer license No. 1777. The note and mortgage were executed by Arthur C. Sallaz, defendant.

Marlys Pomeroy as administratrix of the estate of C. M. Pomeroy, had made demand for payment of the note, but Sallaz has refused to pay any part of it.

The property to which the beer and liquor licenses are attached is the Longhorn Bar, 116 South Merrill, Glendive, Montana. The real property was owned by Mrs. Lulu R. Pomeroy until it was sold in 1968 to Sallaz. The licenses were owned by Lulu R. Pomeroy until 1954, when they were transferred to her son, C.M. Pomeroy.

On March 9, 1956, C. M. Pomeroy transferred the licenses to one John Wrigg. However, C. M. Pomeroy was named on the licenses as mortgagee because concurrently with the transfer of the licenses to Wrigg, Pomeroy required Wrigg to execute a promissory note to him in the amount of $25,000. This note was secured by the chattel mortgage executed by Wrigg.

In May 1963, Wrigg transferred his interest in the licenses to William Reinhardt and Sallaz, at which time they executed a promissory note in the amount of $25,000 payable to C. M. Pomeroy, and secured by a chattel mortgage on the licenses. This latter note and mortgage were similar to the note and mortgage executed by Wrigg when he acquired the licenses in 1956. Reinhardt and Sallaz continued to operate the Longhorn Bar as partners until 1964, when Reinhardt transferred his interest in the bar and licenses to Sallaz.

When Sallaz, individually, took over operation of the bar and licenses in 1964, he also executed to C. M. Pomeroy a note in the amount of $25,000 and signed a mortgage pledging the licenses as security for the note. This note and mortgage are the subject of this lawsuit. The licenses in question are presently in the name of Arthur C. Sallaz, and state that C. M. Pomeroy is the mortgagee.

The issue presented to this Court is whether or not the district court erred by entering judgment against defendant Sallaz because the note and chattel mortgage together merely constitute a security agreement. In other words, is the title to the retail beer license and the retail liquor license encumbered by a $25,000 mortgage or is the defendant correct in his contention that he owns the licenses free of all encumbrances.

Appellant Sallaz argues that the intention of Pomeroy was to prevent the removal of the licenses from the premises during the rental term. He urges this Court to look beneath the surface of this transaction, in order to determine the true intent of the parties when the note and mortgage were executed. We agree with appellant that equity demands close scrutiny of the transaction and are in accord with his cited authority that in equity, substance, not form, controls. However, we can not accept his

contention that the note secured by the mortgage is merely a security agreement to insure the rental of the bar; and, in order to accomplish this security arrangement, the documents were given to insure the licenses would remain attached to the premises.

The district court found, and we agree, that a valid note was signed by appellant. Appellant's argument is that other notes were executed by previous tenants of the premises and Pomeroy never attempted to collect on those notes, which indicates that Pomeroy never intended to collect on appellant's note. Upon careful scrutiny, this argument quickly evaporates. A genuine note was held by Pomeroy and he was free to exercise his option to collect or to refrain from collecting as he deemed necessary. Upon his death. the note passed to his estate, and the estate is correct in calling the note due.

Appellant argues that $25,000 is far above the top dollar price of $1,800, which was the amount recently paid for similar licenses in the Glendive area. He contends this discrepancy indicates that payment of the note was never anticipated by the parties. We cannot accept this argument. The licenses which recently sold for $1,800 in the Glendive area were disposed of at a Sheriff's sale. This sale was a forced auction sale and the value of the licenses may have been considerably more than the price received. This Court has no way of knowing what the going price for liquor and beer licenses might be between a willing buyer and a willing seller. The value of such licenses might well be $25,000. The licenses were valuable and appellant may have made a bad business decision to agree to pay $25,000 for them, but appellant's business sense is not a question for this Court.

Both parties advance arguments as to whether or not the documents in question were negotiable. At the time the note and mortgage were executed by appellant to Pomeroy, the Negotiable Instrument Law was in effect in Montana. Under the then existing law, we find that the note was negotiable and under section 55-301, R.C.M. 1947, a presumption exists that consideration was given for the promissory note. This presumption is coupled with the fact that a common practice existed for a new owner of the Longhorn Bar, in consideration of his receiving the liquor and beer licenses, to endorse on the licenses the name of C. M. Pomeroy as mortgagee and at the same time for the new owner to execute a promissory note in the amount of $25,000 and a mortgage.

The note and mortgage given to Pomeroy by appellant supplanted a note and mortgage given to Pomeroy previously by Reinhardt and appellant in the same amount. This indicates appellant's contention that the documents were merely given as security to prevent removal of the licenses from the premises during the rental term, must fail. Valuable consideration did exist for the issuance of the note and mortgage and we find it was not merely a security agreement.

Appellant further contends he executed the documents to provide Pomeroy security for rent due on the premises under the terms of the February 1964 lease; therefore, appellant did not buy the licenses from Pomeroy, nor did he owe any monetary or other obligation to Pomeroy, other than the rent for the premises containing the Longhorn Bar. We cannot accept this contention. Sallaz and Pomeroy executed a negotiable note, secured by a $25,000 mortgage, on the liquor and beer licenses of the Longhorn Bar. Sallaz now owns the liquor and beer licenses, subject to a mortgage; and for him to receive the licenses free and clear he would have to pay the administratrix of the Pomeroy estate $25,000.

- 5 -

If appellant, as he would have us believe, acquired ownership of the licenses from his predecessor Reinhardt, then appellant would have had no reason to execute the note and mortgage. Appellant paid Reinhardt $1,600 for the one-half interest in the Longhorn Bar. That amount, appellant claims, included the inventory, fixtures and licenses which constituted the bar business. As discussed heretofore, a retail liquor and beer license is worth at least $1,800 in the Glendive area. We cannot accept his contention that the $1,600 paid by appellant to Reinhardt for his one-half interest included inventory, fixtures and licenses. If this were true, why did appellant execute the note secured by a mortgage to Pomeroy; and why did Pomeroy's name appear on the licenses as mortgagee?

Further, appellant argues that Lulu Pomeroy did not transfer the ownership of the licenses to her son in 1956; consequently, in 1968 when she sold the premises containing the bar to appellant, he became the owner. Lulu Pomeroy was unable to testify at trial due to a heart attack. If appellant believed that he would be prejudiced by Mrs. Pomeroy's absence from the trial, he had the right to ask for a continuance until such date as she would be available to testify. This was not done. The district court did not err in denying appellant's motion for a new trial.

The trial court's order denying a new trial, when reviewed by this Court, is presumed correct and the burden of overcoming this presumption is upon the appellant. See State ex rel. Elakovich v. Zbitnoff, 142 Mont. 576, 386 P.2d 343, and cases therein cited.

We find that no error is shown in the trial court; and, therefore, the judgment of that court is affirmed.

_Wesley Castles_
Associate Justice.

- 6 -

We concur:

_James A. Harrison_
Chief Justice

_John Conway Harrison_

_Edward S. ......_

_Gene B. Daly_
Associate Justices.